IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CARMELLA HODGES-MATTHEWS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 2:25-cv-42-ECM |
| | ) | [WO] |
| KIMBERLY BETHUNE-MCQUIDDY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

Defendant, Kimberly Bethune-McQuiddy, moves to dismiss the complaint for lack of subject matter jurisdiction. (Doc. 10). Plaintiff, Carmella Hodges-Matthews, opposes the motion. (Doc. 19). The Magistrate Judge recommends that the Court grant the motion. (Doc. 28). Upon consideration, and for good cause, the motion (doc. 10) is due to be GRANTED.

**I. BACKGROUND**

Plaintiff seeks to recover $120,000 she alleges she loaned Defendant, who was, at one time, her close friend. (*See generally* doc. 1). She alleges that the Court has diversity jurisdiction over this matter because she and Defendant are citizens of different states—Tennessee and Alabama, respectively. (*Id.* at 1, para. 3). If these facts are true, then the Court has diversity jurisdiction over this action. *See* 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between[] . . . citizens of different States[] . . . .").

But these facts are vigorously disputed.  Defendant moves to dismiss on the basis that the complaint "asserts false claims as to [her] citizenship," arguing that she is a citizen of Tennessee, where she lives with her husband, John McQuiddy, in their home at 1816 Rory Cove. (Doc. 10 at 1, 3; *see* doc. 27 at 31:7–11).  Plaintiff responded in opposition, submitting that Defendant "abandoned her marital residence in Tennessee" in 2015 when she relocated to Montgomery, Alabama after inheriting her parents' property at 8118 Wyndham Mews. (Doc. 19 at 1).  Plaintiff also claimed that Defendant has only returned to Tennessee for special occasions—"such as graduations and holidays"—but that Defendant always returns to Alabama, "underscoring the temporary nature of these absences." (*Id.* at 2).  Plaintiff further asserts that since 2020 "Defendant has been engaged in a long-term romantic relationship with an Alabama resident, further solidifying her ties to the state." (*Id.*).

Plaintiff attached two affidavits to her response.  The first was submitted by Mr. McQuiddy, who averred that Defendant is indeed "engaged in a relationship with a person outside of the marriage, which is the primary reason she stays in Alabama." (Doc. 19-1 at 2).  He also swore that Defendant has resided primarily in Alabama since inheriting Wyndham Mews in 2015 and that he has only seen Defendant in Tennessee twice "[i]n the past two years," each time for Christmas. (*Id.* at 1).  The second, authored by Plaintiff, states the same. (*See* doc. 19-2 at 1 ("Since 2020, [Defendant] has been in a personal relationship, an adulterous relationship, with an Alabama resident.  This is the reason why she has been spending 95% or more of her time in Alabama for years and only returns to Tennessee for an occasional holiday.")).

Defendant responded with her own evidence: her Tennessee driver's license (doc. 20 at 5); mail delivered to her home in Tennessee (*id.* at 6–7); portions of an envelope and letter from "Loan Pronto Inc" addressed to Defendant, which purportedly prove that she "is a joint owner of the marital home in Tennessee" (*id.* at 1, 9);[1] her vehicle's Tennessee registration (*id.* at 11); proof that she is registered to vote in Tennessee (*id.* at 12; *see also* doc. 26-4 at 1); and an affidavit from her daughter, Dawn Grimes, that Defendant permanently resides in Tennessee (doc. 20 at 14). Defendant also argues that "the only reason [she] is still in Alabama is due to car troubles." (*Id.* at 2; *see also id.* at 14 (Ms. Grimes' affidavit that Defendant's "vehicle is currently broken down, which may account for any absence [from Tennessee] or lack of transportation")). She unequivocally asserted—though without any supporting evidence—that the allegations that she is having an extramarital affair are false. (*Id.* at 1 ("Counsel will not respond to the inflammatory allegations of an extramarital affair claim by . . . Plaintiff due to it being untrue and its lack of bearing on this matter.")). However, Defendant appears to concede that whether she is having an affair is relevant to this inquiry. (*See id.* ("[O]utside of the allegations of an affair, . . . Plaintiff has not established the intent of . . . Defendant to be domiciled in Alabama.")).

On July 30, 2025, the Magistrate Judge held a hearing to determine Defendant's citizenship. (Doc. 26). Defendant offered several exhibits to supplement those submitted

---

[1] While the portions of the letter and envelope included in Defendant's response do not establish this fact (*see* doc. 20 at 9), the parties do not dispute that Defendant is a joint owner of the Tennessee home (*see* doc. 27 at 28:11–12, 38:21–24).

with her reply, including three credit card statements. (*See* docs. 26-5, 26-6, 26-7; *see also* doc. 27 at 36:1–38:20).[2] She also testified at the hearing, as did Plaintiff and Mr. McQuiddy.

Plaintiff testified that she met Defendant while both were serving in the military in the "early '90s" and that the pair remained close friends until 2023 when communications between the two "broke down" due to the instant dispute. (Doc. 27 at 4:20–6:6). When the Magistrate Judge inquired as to the basis for Plaintiff's knowledge as to Defendant's residency in January 2025, Plaintiff conceded that she did not have direct knowledge given the "strain in the[ir] friendship," but testified that Defendant's children have indicated to her that they believe Defendant lives in Alabama. (*See id.* at 18:12–22:22).

Defendant testified that she has moved to Alabama on a temporary basis to wind up her parents' estate—though that process apparently remains ongoing a full decade after it began.[3] (*Id.* at 32:23–33:5, 45:3–5). She testified that she nevertheless resides in Tennessee. (*Id.* at 33:12–13; *see also id.* at 29:19–21). And though Mr. McQuiddy testified that Defendant spends most of her time in Alabama (*see id.* at 25:10–26:24),[4] he also unequivocally stated that Defendant lives with him in Tennessee:

---

[2] Defendant appears to assert that all three credit card statements were sent to her Tennessee address. However, the address lines on all three have been redacted. (*See* docs. 26-5, 26-6, 26-7). And though she testified at the hearing that one of these statements was sent to her in Tennessee (*see* doc. 27 at 36:15–23), she did not so testify as to the others (*see id.* at 36:24–38:20). But it is undisputed that the proposition for which the credit card statements are offered—that Defendant receives mail at her Tennessee address—is true. (*See id.* at 28:8–10 (Mr. McQuiddy's hearing testimony that Defendant "is still getting mail at the[ir] home in Tennessee")).

[3] There is no evidence in the record regarding the status of Defendant's parents' estate.

[4] Specifically, Defendant's husband testified that Defendant spent 70% of 2022 in Montgomery, 74% of 2023, 82% of 2024, and 80% of the first seven months of 2025. (*See* doc. 27 at 25:10–26:24). The

> Q: Where do you live?
>
> A: I live at 1816 Rory Cove.
>
> Q: Does [Defendant] live there with you?
>
> A: Yes.

(*Id.* at 31:7–11). Defendant similarly testified that she resides in Tennessee, intends to remain there, and that she merely visits Alabama, albeit frequently and for relatively long intervals, which is due in part to her having car troubles.[5] (*See id.* at 42:14–43:14; 53:9–54:12). She further testified that she does not own property in Montgomery and has no ties to any Alabama businesses,[6] though she does maintain a personal checking and savings account with an Alabama bank that she opened more than thirty years ago, before her marriage. (*See id.* at 52:1–53:8, 55:3–10).

At the evidentiary hearing, Plaintiff's counsel began to ask Plaintiff questions designed to elicit information regarding Defendant's alleged affair. Plaintiff testified that Defendant "had several targeted reasons for staying" at Wyndham Mews. (*Id.* at 7:2–11). Plaintiff stated that she had driven past that residence the day before the hearing and that she then "went to another residence." (*Id.* at 7:12–21). Plaintiff's counsel asked whose

---

Magistrate Judge noted that the figures provided for 2023 and 2024 conflicted with Mr. McQuiddy's affidavit, which stated that he had only seen Defendant in Tennessee once during each of those years. (*Id.* at 28:16–29:3; *see* doc. 19-1 at 1). Mr. McQuiddy conceded that his affidavit was incorrect in this regard. (Doc. 27 at 29:4–12).

[5] Defendant explained that when she has occasion to return to Tennessee she must "either rent a car or borrow a car." (Doc. 27 at 54:9–12).

[6] Defendant testified that her extended family owns and operates a local business, but that she has no ties to or interest in this business. (Doc. 27 at 53:5–18).

residence that was, but Defendant's attorney objected, arguing that "this other residence" was irrelevant to Defendant's citizenship. (*Id.* at 7:22–8:1). Plaintiff's counsel disagreed, arguing that "[i]t's relevant . . . because this is the guy who she lives with at that residence and who she meets with at that residence and the reason why she stays at that residence." (*Id.* at 8:8–11). The Magistrate Judge sustained the objection, instructing counsel to lay a proper foundation for any evidence he sought to introduce. (*Id.* at 8:12–24). Counsel resumed his line of inquiry, confirming that Defendant stays at Wyndham Mews when she is in Montgomery. (*Id.* at 9:1–7). This led to the following exchange:

> Q: And who was it that resided at that house?
>
> A: Kimberly Bethune-McQuiddy.
>
> Q: Do you know of any particular reason why she went to that specific house as opposed to anywhere else?
>
> A: Because that was the property that she inherited.
>
> Q: Was she meeting with somebody there or . . . interacting with somebody there in particular or what?

(*Id.* at 9:23–10:4). Defendant's counsel objected again, arguing that who was at Wyndham Mews was irrelevant to the determination of Defendant's citizenship. (*Id.* at 10:5–9). Plaintiff's counsel responded that it was relevant "[b]ecause [Defendant's] reason for being there [(at Wyndham Mews)] matters as to why she would want to continue engaging in the behavior and conduct of being there." (*Id.* at 10:11–13). The Magistrate Judge sustained Defense counsel's objection (*id.* at 10:17), and Plaintiff's counsel did not discuss this topic during the remainder of the hearing.

6

The Magistrate Judge issued a report and recommendation recommending that the motion to dismiss be granted. (Doc. 28). Based on all the evidence presented, the Magistrate Judge found the following:

> Defendant is a native of Montgomery, Alabama. Since 1990, she has maintained a checking and savings account located in Montgomery. In 2015, Defendant's remaining parent passed away, leaving a home in Montgomery. Defendant is the executor of her parents' estate and is responsible for maintaining the property. In January 2025, Defendant spent most of her time in Montgomery. She occasionally receives personal mail at the home in Montgomery. Defendant pays insurance on the home in Montgomery, but the estate pays all other utilities. Defendant does not personally own any property in Montgomery.
>
> In contrast, Defendant owns a home with her husband of 27 years in LaVergne, Tennessee. In January 2025, Defendant was registered to vote in Tennessee, her car was registered in Tennessee[,] and she had a Tennessee driver's license. Defendant receives mail, including credit card bills, at her home in Tennessee. According to Defendant's husband, though Defendant spends most of her time in Alabama, she lives in Tennessee with him. Finally, Defendant testified that she resided in Tennessee and intended to do so indefinitely.

(*Id.* at 3–4 (footnotes omitted)). The Magistrate Judge also noted deficiencies with Plaintiff's primary sources of evidence (herself and Mr. McQuiddy), as Plaintiff "stopped communicating with Defendant in 2023" and Mr. McQuiddy admitted at the hearing that his affidavit was materially inaccurate. (*Id.* at 5 n.8). In light of these findings, the Magistrate Judge determined that Plaintiff failed to satisfy her burden to show that Defendant is an Alabama citizen and therefore recommends that the Court grant Defendant's motion to dismiss. (*Id.* at 5–7).

Plaintiff objects to the recommendation, arguing that the Magistrate Judge abused her discretion in "precluding evidence relating to . . . Defendant's romantic relationship," which Plaintiff argues "is relevant to [Defendant's] intent of remaining indefinitely in Tennessee and undermines the finding that she . . . resides with her husband."[7] (Doc. 29 at 4). "If Defendant is separated from her husband and is in a long-term romantic relationship with an Alabama resident, this fact [is] highly probative of her intent to remain in Alabama indefinitely . . . ." (*Id.* at 5). Because the Magistrate Judge sustained Defendant's objections at the hearing, Plaintiff argues that there has not been "a full and fair consideration of the totality of circumstances bearing on domicile." (*Id.*). The Court ordered Defendant to respond to the objection (doc. 30), but she failed to do so.

## II. LEGAL STANDARD

Federal courts have original ("diversity") jurisdiction of civil actions between "citizens of different States." 28 U.S.C. § 1332. "It is the burden of the party seeking federal jurisdiction to demonstrate that diversity exists by a preponderance of the evidence." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1340 (11th Cir. 2011). Jurisdiction is measured—and thus must lie—at the time an action is brought. *See Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957) ("[J]urisdiction is tested by the facts as they existed when the action is brought . . . ."); *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir.

---

[7] The Court presumes Plaintiff intends to argue that the alluded-to evidence of Defendant's affair is relevant to her intent to remain indefinitely in *Alabama*, the state Plaintiff argues Defendant is a citizen of.

1974) ("[T]he diverse citizenship among adverse parties must be present at the time the complaint is filed." (citations omitted)).[8]

### III.  DISCUSSION

The only question is whether Plaintiff has carried her burden to show that Defendant's state of citizenship, or domicile,[9] is more likely than not Alabama. (*See* doc. 10). "[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989); *accord McCormick v. Aderholt*, 293 F.3d 1254, 1257–58 (11th Cir. 2002) ("A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." (internal quotation omitted and alteration adopted)).  Domicile is therefore a function of "two elements:  (1) physical presence within a state; and (2) the mental intent to make a home there indefinitely." *McDonald v. Equitable Life Ins. Co. of Iowa*, 13 F. Supp. 2d 1279, 1280–81 (M.D. Ala. 1998).[10]

There is a presumption that a person's domicile, once established, remains fixed "until he satisfies the mental and physical requirements of domicile in a new state." *Id.* at 1281 (citing *Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990) and *McDougald v. Jenson*,

---

[8] The decisions of the Fifth Circuit handed down prior to close of business on September 30, 1981, are binding on this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

[9] The terms "citizenship" and "domicile" are synonymous in this context. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).

[10] Here and elsewhere in this Opinion the Court cites nonprecedential cases.  While the Court recognizes that they are nonbinding, the Court nevertheless finds them persuasive.

9

786 F.2d 1465, 1483 (11th Cir. 1986)).  But the inquiry into domicile concerns "an individual's entire course of conduct" and is therefore highly fact intensive. *Id.* (quotation omitted).  Courts consider the following factors:

> current residence; residence of family and dependents; place of employment and name of business; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in church, clubs, and business organizations; driver's license and automobile registration; and payment of taxes.

*Id.* (citation omitted).  Courts will also consider subjective statements of intent, though these must be viewed in light of the objective facts of the case as well as the motivations of the parties submitting the statements. *See Audi Performance & Racing, LLC v. Kasberger*, 273 F. Supp. 2d 1220, 1227 (M.D. Ala. 2003) ("A party seeking to establish that he has changed his domicile may submit declarations of his intention to establish a domicile in a particular state, however like other self-serving declarations, such statements may lack persuasiveness or be negated by other declarations or inconsistent acts.") (citations omitted)).

Plaintiff filed her complaint on January 10, 2025. (*See* doc. 1).  Defendant's hearing testimony suggests that she has spent most of her time this year—including January—in Alabama, not Tennessee. (*See* doc. 27 at 43:11–14).  And she testified that this arrangement—spending the bulk of her time in Alabama—has been the status quo since 2015 when her father passed away and she became responsible for her parents' estate. (*See id.* at 44:19–45:7).  But she also testified that she resides in Tennessee and that she intends to remain there. (*Id.* at 53:9–17).  And as the Magistrate Judge noted, though Mr.

10

McQuiddy testified that Defendant "spend[s] the majority of her time" in Alabama (*see id.* at 25:4–26:24), he unequivocally stated that Defendant lives with him in Tennessee (*see id.* at 31:7–11). He also corroborated Defendant's statements that she is named on the deed to their Tennessee home and that Defendant receives mail at that address. (*Id.* at 28:8–12).

Similarly, though Plaintiff stated in her affidavit and at the hearing that Defendant primarily resides in Alabama, Plaintiff testified at the hearing that she had little direct knowledge of Defendant's residence after 2023, when their relationship effectively ended. (*Id.* at 21:1–22:22). And Defendant's daughter, Dawn Grimes, submitted an affidavit that Defendant "currently resides" at the Tennessee home—which Ms. Grimes swore is Defendant's "permanent address." (Doc. 20 at 14). Add to this the evidence that (1) Defendant has a Tennessee driver's license, (2) her car is registered in Tennessee, (3) she is registered to vote in Tennessee, and (4) she neither owns property in Alabama nor has a connection to any businesses in the state, and the balance of evidence tips towards Tennessee as Defendant's domicile. (*See* doc. 20 at 5). That means Defendant's motion is due to be granted because Plaintiff has failed to carry her burden. *See Lama*, 633 F.3d at 1340; *see also McDonald*, 13 F. Supp. 2d at 1281 ("[O]nce an individual has established a domicile, he remains a citizen there until he satisfies the mental and physical requirements of domicile in a new state.").

This is so even if the Court agrees with Plaintiff that the testimony regarding Defendant's purported affair with an Alabama citizen was improperly excluded. Even if the Court assumes that these allegations are true, the balance of the evidence still shows that Defendant's center of gravity is in Tennessee—where she is licensed to drive,

11

registered to vote, and where her husband testified she lives. Accordingly, any error on the part of the Magistrate Judge is harmless, and so Plaintiff's objection to the recommendation on this basis is overruled.

### IV. CONCLUSION

For the reasons stated, and for good cause, it is

ORDERED as follows:

1. Plaintiff's objections (doc. 29) are OVERRULED.

2. The recommendation of the Magistrate Judge (doc. 28) is ADOPTED.

3. Defendant's motion to dismiss (doc. 10) is GRANTED. This case is DISMISSED without prejudice for lack of subject matter jurisdiction.

4. The Clerk of the Court is DIRECTED to terminate any pending motions and deadlines and to close this case.

DONE this 1st day of December, 2025.

                          /s/ Emily C. Marks
                        EMILY C. MARKS
                        CHIEF UNITED STATES DISTRICT JUDGE